J-A17015-23

2023 PA Super 169

| | | |
|---|---|---|
| LEE R. JOHNSON, JR. AND VICTORIA H. JOHNSON, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 2119 EDA 2022 |
| TOLL BROTHERS, INC., TOLL BROS., INC., TOLL PA VI, L.P., TOLL PA GP CORP., TOLL ARCHITECTURE, INC., AND TOLL ARCHITECTURE I P.A. ANDERSEN WINDOWS, INC., MURTAUGH BROTHERS, INC., M A CARDY CONSTRUCTION, INC., MACK-DONOHOE CONTRACTORS, INC. | : | |

Appeal from the Order Entered July 12, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2018-08502-TT

BEFORE: KING, J., SULLIVAN, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.: **FILED SEPTEMBER 19, 2023**

In this construction defect case, Lee R. Johnson, Jr. and Victoria H. Johnson, H/W (the Johnsons) appeal an order of the Court of Common Pleas of Chester County (trial court) granting summary judgment in favor of Toll Brothers, Inc., Toll Bros., Inc., Toll PA GP Corp., Toll Architecture, Inc. and Toll Architecture I, P.A. (Toll) and dismissing the Johnsons' claims against those parties on the ground that their action was not commenced within the time period set forth in 42 Pa.C.S. 5536 (the Statute of Repose). The

_____

* Retired Senior Judge assigned to the Superior Court.

Johnsons now contend that the trial court erred in applying the Statute of Repose because Toll's violation of building codes had prevented Toll from "lawfully" constructing the subject residence. The Johnsons argue alternatively that even if the Statute of Repose applies, Toll's conduct caused damages in the tenth, eleventh and twelfth year after construction, qualifying the Johnsons for an extension of the Statute of Repose and making their claims timely filed. We affirm.[1]

## I.

The subject residence (the home) is located at 106 Marigold Court, Chester Springs, Pennsylvania. Toll designed the home, obtained a building permit authorizing the home's construction, and completed construction of the home on October 18, 2004. A certificate of occupancy was issued on that same date, and the home was then immediately conveyed to its original purchasers.

The original purchasers later sold the home to the second purchasers who, in turn, sold the home to the Johnsons on September 13, 2016. Over 13 years after the certificate of occupancy was issued, on August 21, 2018, the Johnsons commenced this case by filing a writ of summons. They filed a complaint against Toll in 2020 asserting a violation of the Unfair Trade

---

[1] The trial court also granted summary judgment in favor of another party, Anderson Windows, Inc., in the related appeal, 2118 EDA 2022.

Practices and Consumer Protection Law 73 Pa.C.S. §§ 201-1, *et seq.* (count I); civil conspiracy (count II); fraud (count III) and negligence (count IV). These claims were based on the Johnsons' allegations that Toll had negligently and in violation of applicable building codes installed door frames, brick façade and windows[2] which allowed significant water intrusion into the home, causing continuous damages for at least five years up to and including the year in which their action was commenced. The Johnsons' claims were supported by the testimony of experts who had opined that the home was constructed in violation of building codes and regulations resulting in continuous damage beginning in 2012 at the latest.

In their amended complaint filed on April 30, 2020, the Johnsons acknowledged that since the home's construction was completed on or around October 18, 2004, the Statute of Repose would require their suit to be filed within 12 years of that date, by October 18, 2016, which was over a year prior to the date when their action was brought. They asserted, however, that since their "injury" was ongoing, occurring in "the tenth, eleventh, and twelfth year following the completion of construction," they qualified for an exception to the Statute of Repose which extends the filing period by two years, making

---

[2] The Johnsons have specifically referred to "the Andersen 200 Series Windows" installed in their home as being defectively designed. The manufacturer of those windows is the appellee in the related case, 2118 EDA 2022.

their suit timely filed within 14 years from the completion of the home's construction.

For reasons not germane to this appeal, the trial court sustained Toll's preliminary objections as to count II (civil conspiracy) of the Johnsons' amended complaint, resulting in dismissal of that claim with prejudice. On July 12, 2022, for reasons that *are* germane, the trial court granted Toll's motion for summary judgment and dismissed counts I, II and IV of the amended complaint. **See** Memorandum and Order, 7/13/2022, at 6. The trial court agreed with Toll's position that the Johnsons' suit was barred by the Statute of Repose, as over 12 years had elapsed between the completion of the home's construction and the commencement of the action. The trial court did not expressly consider the Johnsons' alternative argument that they qualified for a two-year extension of the Statute of Repose.

The Johnsons timely appealed. In their brief, they argue that the Statute of Repose is inapplicable because Toll's alleged building code violations made the construction of the home "unlawful." They also argue that even if the Statute of Repose applied, they would have qualified for a two-year extension to file their claims because they sustained injuries in the final three years of the filing window.

Toll counters that construction is "lawful" as long as it is authorized by the governing body with jurisdiction over the project, regardless of any technical violations of the applicable building code. As to the exception to the

Statute of Repose, Toll argues that it does not apply because all of the alleged injuries sustained by the Johnsons were present at the time of construction.

## II.

### A.

The central issue in this case is whether the trial court properly construed the term "lawful" when applying the Statute of Repose and barring the Johnsons' claims.[3]

"Statutes of repose differ from statutes of limitation in that statutes of repose potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues." ***McConnaughey v. Building Components, Inc.***, 637 A.2d 1331, 1332 (Pa. 1994). Because statutes of repose are jurisdictional in nature, courts must determine their scope as a question of law. ***See Gilbert v. Synagro Cent., LLC***, 131 A.3d 1, 15 (Pa. 2015); ***see also Calabretta v. Guidi Homes, Inc.***, 241 A.3d 436, 442 (Pa. Super. 2020) ("[S]tatutory interpretation of the term 'lawfully' as used in [the Statute of Repose] raises a legal question[.]").[4]

_____

[3] The same argument regarding the meaning of "lawful" for Statute of Repose purposes was raised but not resolved on the merits in ***Kopew v. Toll Bros., Inc.***, 760 EDA 2019 (Pa. Super. June 26, 2020) (unpublished memorandum decision) (remanding on procedural grounds).

[4] Summary judgment may be granted in whole or in part as a matter of law "whenever there is no genuine issue of any material fact as to a necessary
*(Footnote Continued Next Page)*

The provision at issue in the present case concerns construction projects, and it reads as follows:

> [A] civil action or proceeding brought against any person **lawfully** performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages[.]

42 Pa.C.S. § 5536(a) (emphasis added).

A party asserting a Statute of Repose defense must, therefore, show that (1) the project involved a lawful improvement to real property; (2) over 12 years have elapsed from the completion of the improvement to commencement of the action; and (3) the party is in the statute's protected class. *See Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994); *McConnaughey v. Building Components, Inc.*, 637 A.2d 1331, 1333 (Pa. 1994). The "completion of the construction of such improvement" marks the "commencement of the repose period at the point when third parties are first exposed to defects in design, planning, or construction." *Catanzaro v. Wasco Products., Inc.*, 489 A.2d 262, 266 (Pa. Super. 1985) (citing *Patraka v. Armco Steel Co.*, 495 F. Supp. 1013, 1019 (M.D. Pa. 1980)).

---

element of the cause of action or defense which could be established by additional discovery or expert report[.]" Pa.R.C.P. 1035.2(1).

- 6 -

The disputed term "lawfully" is undefined in the Statute of Repose and the parties to this appeal have adopted contrary interpretations.[5] "When construing statutory provisions, this [C]ourt is guided by the Statutory Construction Act of 1972 [1 Pa.C.S. §§ 1501–1991]." **Guinn v. Alburtis Fire Co.**, 614 A.2d 218, 220 (Pa. 1991). "Our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." **Egan v. Egan**, 125 A.3d 792, 795 (Pa. Super. 2015) (internal alteration and citation omitted).

"[T]he best indication of the General Assembly's intent in enacting a statute may be found in its plain language[.]" **Watts v. Manheim Twp. Sch. Dist.**, 121 A.3d 964, 979 (Pa. Super. 2015). Words and phrases in statutes must be construed "according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). "One way to ascertain the plain meaning and ordinary usage of terms is by reference to a dictionary definition." **In re Beyer**, 115 A.3d 835, 839 (Pa. 2015) (citation omitted).[6]

---

[5] We note that as of the date that this opinion was issued, there is a proposed amendment to the Statute of Repose before the General Assembly which would include a definition of "lawfully." **See** Sen. 336, 217 Leg. (Pa. 2023). The proposed definition would use the term to mean that a person is licensed or authorized by law to do construction work or that the person has a permit for the construction of improvements to real property. **See id**.

[6] When the plain language of a statute is ambiguous, we may consider, *inter alia*, the object to be obtained and the consequences of a particular interpretation. **See** 1 Pa.C.S. §§ 1921(c)(4) and 1921(c)(6). It must be
*(Footnote Continued Next Page)*

The Statute of Repose was enacted in 1976.[7]  The most recent version of Black's Law Dictionary at the time of that enactment defined "lawful" as "warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law."  *Black's Law Dictionary*, 1032 (4th ed. 1968).  Elaborating further, the Note of that definition explained that "lawful" implies an act "that is authorized, sanctioned, or at any rate not forbidden, by law."  **Id**.  The Note then compared that latter definition to the term "legal" which implies that an act "is done or performed in accordance with the forms and usages of law, or in a technical manner[,]" going no "further than to denote compliance, with positive, technical, or formal rules[.]" **Id**.

A number of decisions have wrestled with the meaning of "lawful" (or "lawfully") in the context of a Statute of Repose and distinguished "lawful" and "legal" in the same manner that Black's Law Dictionary did.  Most notably, in **Branton v. Nicholas Meat, LLC**, 159 A.3d 540 (Pa. Super. 2017), this Court examined a Statute of Repose in the Pennsylvania Right to Farm Act, 3 P.S. §§ 951-957 (RTFA).  The relevant issue in that case turned on whether the

---

presumed "[t]hat the General Assembly [did] not intend a result that is absurd, impossible of execution or unreasonable."  1 Pa.C.S. § 1922(1).

[7] A Bar Association Comment indicates that this version was a "reenactment of act of December 22, 1965 (P.L. 1183) (12 P.S. 65.1 *et seq*.)."

RTFA's use of the term "lawful" encompassed technical violations of state and federal law.

The defendants in **Branton** were a slaughterhouse and farmers who used food processing waste as a fertilizer, causing strong odors to migrate onto the plaintiffs' property. The plaintiffs filed a nuisance action and the defendants argued that the claim was barred by the RTFA's Statute of Repose, which prohibits nuisance actions "against an agricultural operation which has *lawfully* been in operation for one year or more prior to the date of bringing such action[.]" 3 P.S. § 954(a) (emphasis added). The plaintiffs asserted that the defendants had not operated "lawfully" because they had been cited several times by the Pennsylvania Department of Environmental Protection for non-compliance with state and federal laws and local regulations.

The trial court granted the defendants' summary judgment motion on the ground that the plaintiffs' suit was barred by the RTFA's Statute of Repose. On appeal, this Court upheld that ruling because at the relevant times, the defendants' agricultural operation was in "substantial compliance" with applicable federal, state and local laws at least one year prior to the filing of a complaint. **See Branton**, 159 A.3d at 550 ("[T]echnical violations of a federal, state, or local law [do] not strip an agricultural operation of protection under RTFA."); **see also Horne v. Haladay**, 728 A.2d 954, 958 (Pa. Super. 1999) (finding that defendant's agricultural operation was not "unlawful" for

the purposes of the RTFA's Statute of Repose because the farmer had "made every effort to comply with applicable statutes and regulations[.]").[8]

In a more recent unpublished decision,[9] this Court applied *Branton's* rationale when evaluating the scope of the Statute of Repose in the construction context. The issue in that case, *Evangelical Lutheran Church of the Atonement at Wyomissing, PA v. Horst Constr.*, 602 MDA 2020 (Pa. Super. March 21, 2021) (unpublished memorandum decision), was whether the defendant builder's construction of a new church wing was "lawful" despite water infiltration problems resulting from alleged violations of building codes and local ordinances.

The plaintiffs in *Horst* maintained that the construction was not "lawful," while the defendant emphasized that an occupancy permit had been issued by the Commonwealth upon completion of the project, confirming that the construction had been carried out consistently with the applicable codes and building plans. To resolve the issue, this Court quoted *Branton* at length, concluding that the trial court did not err in applying the Statute of Repose because "[t]he occupancy permit constituted evidence of record to indicate

---

[8] The *Branton* Court explained further that, "[i]f an individual who possesses a valid driver's license is speeding, he is not legally operating the vehicle because he is driving over the posted speed limit. Nonetheless, he is lawfully operating the vehicle because he is licensed to do so." *Branton*, 159 A.3d at 555 n.14.

[9] Unpublished non-precedential memorandum of this Court filed after May 1, 2019, may be cited for their persuasive value. *See* Pa. R.A.P. No. 126(b).

- 10 -

that [the builders] lawfully performed the construction." ***Horst***, 602 MDA 2020, at * 5.

As in ***Branton*** and ***Horst***, we find that the trial court did not err in applying the Statute of Repose despite the allegation of building code violations. Even if Toll violated local, state or federal rules when constructing the residence, the construction was still "lawful" because Toll was authorized under the laws of the Commonwealth to do it. There is no dispute that Toll was a licensed home builder and that a certificate of occupancy was issued by the Commonwealth when construction of the Johnsons' home was completed. ***See id***. Thus, the Johnsons' claims against Toll were barred by the Statute of Repose as a matter of law because they were filed over 12 years after the completion of the home's lawful construction. ***See Branton***, 159 A.3d at 550; ***Horst***, 602 MDA 2020, at * 5.

## B.

The Johnsons' alternative ground for relief is that their claims were timely even if the Statute of Repose applies because they qualified for a two-year extension of the filing period. Although the trial court did not expressly consider this ground, the issue may nevertheless be decided as a matter of law on appeal. ***See In re A.J.R.-H.***, 188 A.3d 1157, 1175-76 (Pa. 2018) ("The right-for-any-reason doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record.").

The Statute of Repose provides that a construction defect claim may be filed within 14 years of the completion of construction (beyond the usual 12-year limit) if "an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement[.]"  42 Pa. C.S. § 5536(b)(1). "Injury" is not defined in subsection (b) of the statute, but it is specified that the type of injury addressed there relates to those enumerated in subsection (a), which concern injuries either to persons or property resulting from a construction defect.  **See id**. at § 5536(a)(1)-(4).

Construing the term "injury" broadly, the Johnsons suggest that damages arising from alleged design and construction defects dating back to 2012 or earlier may constitute a "continuing injury" in each year that the underlying problem worsened or simply went unresolved, including *but not limited to* the tenth, eleventh and twelfth year after construction of the home was completed, making the exception applicable.  **See** Appellant's Brief, at 17 (citing **Kowalski v. TOA PA V, L.P.**, 206 A.3d 1148, 1168 (Pa. Super. 2019)). As evidence in support of their argument, the Johnsons have submitted expert opinions that the construction defects in the home have caused damages continuously every year since 2012, perhaps as far back as the year of the home's completion.

The Johnsons' legal authority for their position is scant – they rely primarily on our decision in **Kowalski**, where we observed that:

> When there are **continuing or repeated wrongs that are capable of being terminated**, a claim accrues every day the

- 12 -

wrong continues or each time it is repeated, the result being that the plaintiff is only barred from recovering those damages that were ascertainable prior to the statutory period preceding the lawsuit.

206 A.3d at 1168 (emphasis added). The Johnsons reason that if they first sustained injuries from a defect in 2012, and the defect kept causing injuries every year thereafter, it would constitute the kind of continued harm contemplated in **Kowalski**.

This proposed basis for reversal has no merit. In **Kowalski**, the issue was whether a trespass onto land was of such a repeating nature that the statute of limitations would be tolled for as long as the wrongful act of trespass kept recurring. **See id**. The case did not speak to whether a "continued harm" from a single act of trespass would toll the statute of limitations indefinitely. Nor did **Kowalski** concern a Statute of Repose.

As discussed above, we are constrained to apply the well-established rules of statutory interpretation. This Court is bound to give effect to plain language of a statute. Undefined terms in a statute (such as "injury") cannot be interpreted in a way that would lead to absurd results or negate the intent of the General Assembly. **See generally** 1 Pa.C.S. §§ 1501–1991.

The focus of a Statute of Repose is on "the defendant's conduct" so that the statute begins "to run when the defendant completes a specified act[.]" **Dubose v. Quinlan**, 173 A.3d 634, 642 (Pa. 2017). To that end, the Statute of Repose limits the liability of builders for defects by barring suits filed 12 years from the date construction is completed. **See id**.

In light of the purpose of the Statute of Repose and the tenets of statutory interpretation, we hold that the "injury" intended by the language of Section 42 Pa.C.S. § 5536(b) necessarily refers to damages that *first arise* from a defect in the tenth, eleventh or twelfth year after the construction of a structure is completed. The Johnsons' "continuing harm" test and liberal interpretation of "injury" is unworkable because it would thwart the intent of the General Assembly, extending the period of liability for builders an extra two years on a nearly automatic basis. The interpretation would also lead to arbitrary application of the two-year exception.

For example, if a design defect causes water intrusion into a structure immediately after construction is completed, this "injury" would no doubt persist every year thereafter until the problem is fixed. It would not make any sense for the General Assembly to have intended to allow 14 years to file a defect claim from the date of completed construction in that scenario, but not for others in which a similar isolated injury fails to recur in the tenth, eleventh or twelfth year after completed construction.

Reading together all the sections of the Statute of Repose, it is clear that the injury contemplated in the exception of part (b) was meant to be one that "shall occur" or arise for the first time no earlier than the tenth year of the filing period. It was not meant to refer to a recurring or continuous injury that began years prior to that three-year range. We, therefore, decline to adopt the Johnsons' interpretation of the statute. Since the Johnsons' alleged

injury began at least several years before the final three years of the Statute of Repose's filing period, we uphold the trial court's order granting summary judgment in favor of Toll and dismissing the Johnsons' claims.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2023