J-A08004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THEODORE AND KRISTI ANDRZEJCZYK, ROY AND HELEN BRITO, JAMES AND ELLEN CARUSO, HELEN AND ADAM CHAN, WILLIAMS AND ROSEANNE COWEN, NEIL AND MARY ANN DAMATO, SUREN GULRAJANI AND RATNA SHAH, ROGER AND MELISSA KENT, TODD AND MICHELE KRAUSE, TIMOTHY AND LORRAINE NELSON, MICHEL AND SALOMINA PANIGEL, PATRICIA AND GORDON RILEY, GREEN WEATHERHILL, LLC C/O PATRICIA RILEY, JOHN AND DOROTHY RODZVILLA, PHILIP AND LANIE SJOSTEDT, JANUSZ AND IVONA SKIBICKI, MARC AND TRINITY STONE, JOSEPH UHL AND ANTHONY DAURIA, STEVEN AND KATHRYN URBANIAK, AND CHRISTOPHER AND ROSEMOND WILKINS | : : : : : : : : : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br>No. 1561 EDA 2024 |
| Appellants | : : : | |
| v. | : : : : | |
| TOLL BROTHERS, INC., TOLL PA, L.P., TOLL PA II, L.P., TOLL PA IV, L.P., TOLL PA VI, L.P., STONE MILL ESTATES, L.P., TOLL PA GP CORP., SWEDESFORD CHASE, L.P., AND TOLL BROS., INC. | : : : : : : : | |

Appeal from the Order Entered May 3, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  240301743

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                              **FILED JULY 16, 2025**

Theodore and Kristi Andrzejczyk, et al. ("Appellants"), appeal from the order, entered in the Court of Common Pleas of Philadelphia County, denying their petition to vacate an arbitrator's decision and order. After careful review, we affirm.

The trial court set forth the factual and procedural history of this case as follows:

The subject petition to vacate [the] arbitrator's decision and order dated February 14, 2024[,] raises a consolidated challenge on behalf of approximately thirty-eight plaintiffs as owners of about twenty homes who contend they have been denied a right to a full and fair arbitration hearing following the arbitrator's dismissal of their underlying civil claims via dispositive litigated motion. Each of the named plaintiffs, hereinafter referenced as "Homeowners," had filed underlying civil actions between 2017-2018, alleging the existence of unrepaired "massive hidden defects" and damages, largely related to stucco, and building cladding problems in their homes that had been built and sold to them in 2002-2004 by Defendants, Toll Brothers Inc., and related entities, hereinafter referenced as "Toll Brothers."

Throughout the next seven plus years of merciless litigation, considerable expense, wasted resources, and incessant motions and appeals, the civil actions were transferred from Bucks County to Philadelphia County, consolidated, and assigned for disposition within the Arbitration Program in the Court of Common Pleas for the First Judicial District of Pennsylvania[,] Civil Division.

The undisputed record reflects that litigation involving these same parties continued throughout arbitration proceedings which had been docketed under July Term 2022 No. 01289 (Case ID No. 220701289). In October 2020, this jurist presiding within the motions program for the First Judicial District of Pennsylvania[,] Civil Division, conducted hearings[] and disposed of various motions related to Toll Brothers' efforts to remove the initially assigned arbitrator[,] Norman Ashton Klinger, Esquire, after the arbitrator had issued certain discovery rulings against Toll Brothers. Toll Brothers appealed this court's order and decision denying the requested removal of Arbitrator Klinger as

- 2 -

prematurely filed mid-stream during arbitration proceedings and other orders that had been entered concerning stays of proceedings. Notably, on June 23, 2022[,] Arbitrator Klinger had entered a ruling via email communication to counsel for the respective parties to hold in abeyance the respondents' omnibus dispositive motion to dismiss all claimants with prejudice. [That appeal was subsequently discontinued as moot.]

Every subsequent attempt by Toll Brothers to have Arbitrator Klinger removed was rebuffed by the American Arbitration Association ("AAA") until March 30, 2023. On that date, AAA removed Arbitrator Klinger via correspondence summarily reciting that an arbitrator is subject to disqualification for partiality or lack of independence, inability, or refusal to perform his/her duties with diligence and good faith, or any grounds for disqualification provided by applicable laws. No further details were provided for removal reasons.

Arbitration proceedings had been in progress for almost six months when the new arbitrator, Kevin Slakas, [Esquire,] was appointed by AAA. A scheduling conference took place in November 2023[, which] provided a December 15, 2023 deadline for filing pre-trial briefs. Another conference was scheduled for January 31, 2024. Arbitrator Slakas also scheduled hearings in advance for March 2024. On January 30, 2024, Arbitrator Slakas canceled the January 31, 2024 conference. Arbitrator Slakas sent email communications to the attorneys for all parties requesting full submission of information and legal arguments particularly concerning the defendants' previously raised motion seeking dismissal based upon the Statute of Repose, 42 Pa.C.S.A. § 5536[,] and particularly the recently decided case of ***Johnson v. Toll Brothers***, 302 A.3d 1231, 1238 (Pa. Super. 2023).

The Statute of Repose[] sets a twelve-year deadline for bringing any civil action for damages against defendants caused by poor construction work and includes an additional two-year exception allowance for filing time for damages that had reportedly occurred during [the] tenth to twelfth years following completion of construction. In ***Johnson***, the Superior Court of Pennsylvania directed:

> A party asserting a Statute of Repose defense must, therefore, show that (1) the project involved a lawful improvement to real property; (2) over twelve years have elapsed from the completion of the improvement to

commencement of the action; and (3) the party is in the statute's protected class. The ["]completion of the construction of such improvement["] marks the ["]commencement of the repose period at the point when third parties are first exposed to defect in design[,] planning[,] or construction.["]

***Johnson***[, 302 A.3d at 1238 (citations omitted)].

On February 14, 2024[,] Arbitrator Slakas issued his "Decision and Order" without evidentiary hearings based upon the submissions of voluminous party briefs and attachments. Arbitrator Slakas determined that the defendants had met all three of the ***Johnson*** requirements, and that the plaintiffs had not been entitled to the additional two[-]year[] grace period. He [reasoned] that because plaintiffs' claims[,] as declared in the respective pleadings, briefs, and memoranda, had demonstrated that the construction problems had started as soon as the homes had been built, and not between the tenth and twelfth years after construction, the statutory time bar [] applied. Arbitrator Slakas formally dismissed all of plaintiffs' consolidated claims because the Homeowners had been similarly situated as averred.

On March 14, 2024, the subject petition to vacate arbitration was filed as a miscellaneous motion, docketed under March Term 2024 No. 01743 and Motion Control No. 24033333, and subsequently assigned to this court for disposition on March 21, 2024. This court issued an order and rule to show cause directing [an] in[-]person hearing to be conducted on April 17, 2024. Defendants' counseled answer in opposition of [the p]etition to vacate arbitration was filed on April 12, 2024. Oral arguments were presented by counsel for all parties before this court on April 17, 2024. Extensive briefs and reply briefs were filed with attachments.

Trial Court Opinion, 5/3/24, at 2-5 (unnecessary capitalization and footnotes omitted).

On May 3, 2024, the trial court denied the petition to vacate the arbitrator's decision. Appellants filed a timely notice of appeal, followed by a

court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants raise the following claims for our review:

> 1. Were the [Appellants] denied the due process required in 42 Pa.C.S.[A.] § 7307 when they were never given a hearing after seven years of arbitration, were never given the opportunity to even present oral argument on motions, and were never provided the opportunity to provide witness testimony or cross-examine witnesses in an evidentiary hearing, as is required [by section] 7307?
>
> 2. Did the trial court err in failing to find that the [AAA] rules permitting dispositive motions without any hearing or oral argument violate Pennsylvania's arbitration statute at [section] 7307[, which] requires a hearing, thus denying [Appellants] their due process rights?
>
> 3. Did the trial court abuse its discretion in denying the petition to vacate arbitration award [] under 42 Pa.C.S.[A.] § 7314, which requires an award be vacated where a hearing was not conducted as required by [section] 7307?

Brief of Appellants, at 7 (reordered; unnecessary capitalization omitted).

We begin by noting that "arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. [A] trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law." **U.S. Claims, Inc. v. Dougherty**, 914 A.2d 874, 876-77 (Pa. Super. 2006) (citations omitted).

Prior to addressing the merits of Appellants' claims, we must determine which arbitration scheme applies. Here, the arbitration clause contained in the Appellants' agreements of sale provides, in relevant part, as follows:

> 11. ARBITRATION: [Appellants] . . . hereby agree that any and all disputes with [Toll Brothers] . . . arising out of the Premises,

this Agreement, the Home Warranty, any other agreements, communications or dealings involving [Appellants], or the construction or condition of the Premises including, but not limited to, disputes concerning breach of contract, express or implied warranties, personal injuries and/or illness, mold-related claims, representations and/or omissions by [Toll Brothers], on-site and off-site conditions and all other torts and statutory clauses of action ("Claims") **shall be resolved by . . . binding arbitration pursuant to the Construction Rules of Arbitration of the [AAA.]** . . . The provisions of this paragraph shall be governed by the provisions of the Federal Arbitration Act ["FAA"], 9 U.S.C. § 1, et seq. and shall survive settlement.

Agreement of Sale, at ¶ 11 (emphasis added).

In Pennsylvania, a trial court's standard for reviewing an arbitration award varies depending upon whether the arbitration is classified as common law, **see** 42 Pa.C.S.A. §§ 7341-7342, or statutory under the Pennsylvania Uniform Arbitration Act ("PUAA"). **See id.** at §§ 7301-7320. In general, an agreement to arbitrate a controversy entered into prior to July 1, 2019,[1] is "conclusively presumed" to be an agreement to arbitrate as a common law arbitration unless the agreement expressly provides in writing for arbitration pursuant to the PUAA's statutory arbitration provisions or any other similar statute. **See id.** at § 7302(a).

Here, Appellants base their claims on section 7307 of the PUAA, which provides, inter alia, that parties and their attorneys have "the right to be

---

[1] The General Assembly passed the Revised Statutory Arbitration Act ("RSAA"), 42 Pa.C.S.A. §§ 7321.1-7321.31, which phases out common law arbitration in this Commonwealth in favor of the provisions in RSAA. **See Foster v. Nuffer**, 286 A.3d 279, 284 n.3 (Pa. Super. 2022). The RSAA applies to all arbitration agreements made on or after July 1, 2019. **See** 42 Pa.C.S.A. § 7321.4(a).

heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." *Id.* at § 7307(a)(4). Toll, however, argues that the common law rules of arbitration apply and, thus, section 7307 is inapplicable. We agree.

The parties in this matter agreed that any disputes would be resolved "by binding arbitration pursuant to the Construction Rules of Arbitration of the [AAA]." Agreement of Sale, at ¶ 11 (Arbitration). Our courts have consistently held that "[a]n agreement to arbitrate in accordance with the [r]ules of the AAA is an agreement pursuant to common law arbitration." *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 183 (Pa. Super. 1999), citing *Runewicz v. Keystone, Ins. Co.*, 383 A.2d 189, 191 (Pa. 1978); *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 n.5 (Pa. Super. 1997); *Goral v. Fox Ridge, Inc.*, 683 A.2d 931, 932 (Pa. Super. 1996). *See also D'Amelia v. Toll Bros, Inc.*, 235 A.3d 321, 324-25 (Pa. Super. 2020) (clause providing for binding arbitration under AAA rules denotes common law arbitration); *Mulnix v. Toll Brothers, Inc.*, 245 A.3d 1067, at *2 (Pa. Super. 2020) (Table)[2] (reviewing arbitration agreement identical to that in matter sub judice under "legal rubric applicable to common law arbitrations").

Nevertheless, under both the common law and PUAA schemes, the denial of a hearing or refusal to hear evidence material to the controversy are

---

[2] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions filed after May 1, 2019 may be cited for their persuasive value.

grounds for vacatur of an arbitrator's award. Under the common law standard, set forth at section 7341, an arbitrator's award "is binding and may not be vacated or modified [by a court] unless it is clearly shown that a party **was denied a hearing** or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. § 7341 (emphasis added). Similarly, the PUAA provides, in relevant part:

> (1) On application of a party, the court shall vacate an award where:
>
> > (i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable; [or]
> >
> > . . .
> >
> > (iv) **the arbitrators** refused to postpone the hearing upon good cause being shown therefor or **refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307** (relating to hearing before arbitrators), as to prejudice substantially the rights of a party[.]

*Id.* at § 7314(a)(1) (emphasis added).

While Appellants raise three claims on appeal, these claims all are grounded in the arbitrator's failure to hold a hearing prior to issuing the award. Appellants argue that, in denying their petition to vacate, the trial court abused its discretion by focusing on the merits of the underlying dispute rather than the fact that the arbitrator failed to hold a hearing. **See** Brief of Appellants, at 18. Appellants argue that there are factual issues surrounding the applicability of the Statute of Repose and whether each entity is subject

thereto. *Id.* at 21. Appellants further argue that Rule 34[3] of the AAA Construction Industry Rules, providing for dispositive motions, conflicts with section 7307 and is, accordingly, trumped by the statute. *Id.* at 22. Appellants claim that there is also an internal conflict in the AAA rules. They assert that Rules 33 (Conduct of Proceedings) and 35 (Evidence) conflict with Rule 34 "because a dispositive motion, if granted prior to a hearing, violates the right to a hearing." *Id.* at 24.[4] Appellants claim that

> [a] hearing would have given [them] an evidentiary opportunity to distinguish the facts of the case from *Johnson*, particularly where [Appellants] could present evidence that the entities that sold them their homes were not covered by the [S]tatute of [R]epose. A hearing would have given [Appellants] an opportunity to demonstrate that the *Johnson* decision was wrongly decided, which is particularly meaningful since they do

_____

[3] Rule 34 provides as follows: "Upon prior written application, the arbitrator may permit motions that dispose of all or part of a claim, or narrow the issues in a case." AAA Construction Rules, R-34.

[4] Appellants also allege that, at the time they entered into the arbitration agreement, the 2003 AAA Construction Rules did not provide for dispositive motions. As such, they claim that Rule 34 "cannot be unilaterally imposed on a party[,] as was the case here." Brief of Appellants, at 25-26. This claim was not included in Appellants' statement of questions involved and is, therefore, waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Moreover, even if not waived, the claim would be meritless. The 2003 AAA Construction Rules expressly provided that "[t]hese rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA." AAA Construction Rules, eff. 7/1/03 (Important Notice). In 2017, at the time Appellants filed their statements of claim, the rules provided for dispositive motions. *See* AAA Construction Rules, eff. 7/1/15, at R-34.

not have a right to appeal the merits of an arbitration decision rendered [by the] AAA.

*Id.* at 28-29.

In response, Toll Brothers argues that AAA rules, by which the parties agreed to be bound, explicitly permit dispositive motions. *See* Brief of Appellee, at 24. Citing *Toll Naval Assoc. v. Chun-Fang Hsu*, 85 A.3d 521 (Pa. Super. 2014), as well as a litany of federal cases, Toll Brothers asserts that "courts across the United States have consistently held that summary adjudication and dispositive motion practice are permissible in arbitration proceedings." Brie of Appellee, at 26-27; *see id.* at 27-30 (citing cases). Toll Brothers further argues that Appellants "mak[e] no showing that [section] 7307 of the PUAA even applies to this case." *Id.* at 31. However, even if the PUAA were applicable, Toll Brothers directs our attention to *Kopew v. Toll Bros., Inc.*, 248 A.3d 467 (Pa. Super. 2021) (Table), in which this Court "recently addressed this specific argument and held that an arbitrator's grant of a dispositive motion without a full evidentiary hearing does **not** constitute grounds to overrule or vacate an arbitrator's decision[,] including when viewed under the PUAA." Brief of Appellees, at 32 (emphasis in original). Toll Brothers argues that Appellants "cannot establish that they were deprived of an opportunity to present **relevant** evidence and/or for a fair hearing." *Id.* at 35 (emphasis in original). Rather,

> all of the AAA Rules were meticulously followed by [Toll Brothers] when requesting permission to file (and in filing) [its] request for dispositive relief. After initially granting [Toll Brothers'] request to file a dispositive motion and prior to the filing of briefs, the [a]rbitrator bent over backwards allowing the parties to submit all

evidence relevant to their respective positions. On multiple occasions, the [a]rbitrator strongly cautioned all parties that they should submit "**all evidence**" which they believed supported their claims and defenses. The [a]rbitrator put no limits on the evidence that the parties were permitted to submit, nor any limits on the size of the briefs which the parties were allowed to file. [Appellants] filed a sixty[-]page response to [Toll Brothers'] dispositive motion, and had every opportunity to file a reply memorandum of law in response to [Toll Brothers'] filing, which [Appellants] simply failed to file.

Brief of Appellees, at 35-36 (emphasis in original).

In **Kopew**, this Court addressed a scenario nearly identical to that presented in the instant matter.[5] In that case, the Kopews received title to their newly constructed home on February 13, 2003. **Kopew v. Toll Brothers, Inc.**, 237 A.3d 1088, at *1 (Pa. Super. 2020) (Table). Nearly 14 years later, claiming that Toll Brothers was liable for recently discovered water intrusions requiring extensive repairs to the home, the Kopews filed a statement of claims with the AAA in accordance with the arbitration clause of their agreement of sale. **Id.** Following a preliminary teleconference with the arbitrator, Toll Brothers filed a dispositive motion seeking dismissal of all claims as a matter of law based on the Statute of Repose. **Id.** at *2. In response, the Kopews argued, inter alia, that dismissal would be improper because discovery was not yet complete and requested to present expert testimony as to when their damages occurred. **Id.** at *4. Following a hearing at which "the parties articulated their rival interpretations of the Statute of Repose," the arbitrator notified the parties of his tentative conclusion that the

_____

[5] We note that Appellants' counsel in this matter also represented the Kopews.

Statute of Repose applied and gave the Kopews "a final chance to notify him of any additional issues that could possibly bear on the final disposition." *Id.* On September 6, 2018, the arbitrator issued an order dismissing the Kopews claims on the basis of the Statute of Repose, concluding that summary dismissal was appropriate as a matter of law "because an evidentiary hearing would reveal no new pertinent information." *Id.*

The Kopews filed a petition in the trial court requesting that the arbitrator's award be vacated, arguing that summary denial of their claims violated their right to a full hearing because outstanding questions of fact remained as to multiple issues. *Id.* at *5. At argument on the petition, "the Kopews stressed that the arbitrator had dismissed their claims without giving them any opportunity to present material evidence." *Id.* The trial court ultimately granted the Kopews' petition, ordering a new arbitration before a new arbitrator. *Id.* at *6.

Toll Brothers appealed. In its Rule 1925(a) opinion, "the trial court did not address the substance of the arbitrator's ruling [but, i]nstead, . . . focused solely on the appealability of its order." *Id.* at *6. Although "appear[ing] to base its dismissal on the arbitrator's perceived error in ruling on [Toll's d]ispositive [m]otion before discovery had concluded," the trial court "did not specify any outstanding discovery that could affect the arbitrator's ruling." *Id.*

Preliminarily, this Court addressed the issue of jurisdiction, noting that "typically, we would have to quash an appeal as interlocutory if it arises from an order directing further arbitration[,] as the subject order does here." *Id.*

The Court noted the standard for vacating an arbitrator's award and stated that,

> [a]lthough [s]ection 7314 refers to denial of a hearing as being a basis for vacating an arbitrator's award, that does not mean that in all instances an evidentiary hearing must be held. Because the rules governing arbitration permit the summary disposition of claims, we have explained that the absence of an evidentiary hearing is not a per se deprivation of the right to be heard at arbitration. ***See generally*** [] ***Chun-Fang Hsu***, 85 A.3d [at] 526-27 [.][8] Rather, it is when an arbitrator refuses to consider a party's "material evidence" that a trial court may step in to safeguard the right to a fair and impartial disposition. ***Id.*** (quoting ***Andrew v. CUNA Brokerage Services, Inc.***, 976 A.2d 496 (Pa. Super. 2009)).

> [8] Similarly, while [s]ection 504 the Administrative Agency Law, 2 Pa.C.S.[A.] § 504, mandates that a party receive an opportunity to be heard, that opportunity does not require the equivalent of an evidentiary hearing in every case. ***Manor v. Department of Public Welfare***, 796 A.2d 1020 (Pa. Cmwlth. 2002). Where there are no disputed facts, the motion proceedings, including briefs and arguments by both parties, provide ample opportunity for the parties to be heard, and the Administrative Agency Law requires no more. ***Independence Blue Cross v. Pennsylvania Ins. Dept.***, 802 A.2d 715 (Pa. Cmwlth. 2002).

***Id.*** at *7. Ultimately, this Court concluded that, in order to operate within its statutory authority to vacate the arbitrator's award, "the trial court had to show that the arbitrator precluded material evidence from being considered which would have an effect on the outcome of the arbitrator's decision." ***Id.*** at *8. Because the trial court did not identify any such material evidence, the Court concluded it was unable to determine whether it possessed jurisdiction over the appeal. Accordingly, this Court remanded the case to the trial court "to specify the material evidence that any outstanding discovery would

- 13 -

produce" as to the arbitrator's ruling that the Statute of Repose barred the Kopews' claims. *Id.* at *9.

On remand, the trial court submitted a response to this Court's directive "but did not identify any particular piece of outstanding evidence that could have even arguably made the Statute of Repose inapplicable as a matter of law." *Id.*, 248 A.3d at *2. This Court found

> this lack of factual detail [] problematic because the arbitrator could have only committed an "impropriety" through the denial of a hearing if the Kopews were actually deprived of the opportunity to present material evidence regarding the applicability of the Statute of Repose. Such a finding would require the Kopews to demonstrate that such evidence would have been forthcoming but for the premature timing of the arbitrator's decision. The Kopews could not have wrongfully been denied a hearing to present material evidence if they had no such evidence to present.
>
> The Kopews have had numerous opportunities during arbitration, the trial stage and the appeal to formulate a cogent theory about how the arbitrator improperly dismissed their claims, and the Kopews have remained unable to do so. Without any basis in the record showing that the arbitrator denied the Kopews the chance to present evidence raising a genuine fact question as to the Statute of Repose, the trial court lacked authority to vacate the arbitrator's dismissal. The arbitrator's ruling was, therefore, binding on the trial court, giving Toll [Brothers] the right to an interlocutory appeal of the trial court's vacatur.

*Id.* at *2. Accordingly, the Court reversed the trial court's order and reinstated the arbitrator's dismissal of the Kopews' claims.

We find the reasoning in *Kopew* persuasive. As in that case, there is no "basis in the record showing that the arbitrator denied [Appellants] the chance to present [material] evidence raising a genuine fact question as to the Statute of Repose." *Id.* Rather, Arbitrator Slakas afforded Appellants a

full and fair opportunity to present any and all evidence and argument in support of their claims. In an email to counsel dated October 5, 2023, Arbitrator Slakas stated the following with regard to the parties' submissions:

> Accordingly, what I am requiring the pre-hearing submissions to include are not just assertions as would support or refute the existence of triable issues of fact, but **the specifics of the evidence and testimony that will be proffered** at the hearing to prove those assertions.

Toll Brothers Memorandum of Law in Opposition to Petition to Vacate, 4/12/24, at Exhibit G (emphasis added). In a subsequent email to counsel dated December 14, 2023, Arbitrator Slakas reiterated:

> I expect all facts, arguments[,] and authorities to be presented in the parties' papers. **Please do not hold back** in the expectation that everything will be clarified, revealed[,] and understood at some oral argument.

*Id.* at Exhibit E (emphasis added).

Toll Brothers argue that

> [Appellants] filed a sixty[-]page "omnibus" brief on behalf of all [Appellants,] addressing their claims and the issues raised by [Toll Brothers] in support of dispositive relief. [Appellants] also had the opportunity to submit all documents, reports, testimony, and other evidence they deemed relevant to their opposition to [Toll Brothers'] request for dispositive relief. On December 18, 2023, [Appellants] submitted voluminous evidentiary materials in support of their opposition to [Toll Brothers'] request for dispositive relief including, amongst other things, agreements of sale, expert reports, notices to cure, opinions from other matters, deposition transcripts, Toll [Brothers] website wayback pages, Toll [Brothers] brochures, Toll [Brothers] correspondence with the SEC, Toll [Brothers] 10-K forms, stucco subcontracts, a Toll [Brothers] earnings call, and Toll [Brothers] press releases. Not satisfied with just those submissions, on January 11, 2024, [Appellants] supplemented their filing of evidentiary materials in support of their opposition to the request for dispositive relief and

- 15 -

produced more expert reports, additional deposition transcripts, BOCA standards, IRC documents, Toll [Brothers] advertisements and brochures, plans of individual developments, public offering statements, Action News videos, a Toll [Brothers] organizational chart, and a Toll [Brothers] trademark application. **The Arbitrator received all of these submissions and rejected none**.

Brief of Appellees, at 14 (emphasis in original).[6]

Appellants identify only one piece of additional evidence that it claims it would have presented, in light of *Johnson*, had the arbitrator afforded them a hearing. Specifically, Appellants assert that,

[c]ritically, this Court entered the *Johnson* decision after the expert reports in this matter were already completed. A hearing would have provided an opportunity for [Appellants] to adduce expert testimony that the certificates of occupancy should not have been issued.[7] Because the *Johnson* decision post-dated the expert report and homeowners did not have a chance to

---

[6] Appellants do not dispute this characterization of the evidence they submitted to the arbitrator.

[7] In *Johnson*, the central issue was "whether the trial court properly construed the term 'lawful' when applying the Statute of Repose and barring the Johnsons' claims." *Johnson*, 302 A.3d at 1234. The Johnsons argued that the Statute of Repose was inapplicable because "Toll's alleged building violations made the construction of the home 'unlawful.'" *Id.* The Court concluded that:

Even if Toll violated local, state or federal rules when constructing the residence, the construction was still "lawful" because Toll was authorized under the laws of the Commonwealth to do it. There is no dispute that Toll was a licensed home builder and that a certificate of occupancy was issued by the Commonwealth when construction of the Johnsons' home was completed. Thus, the Johnsons' claims against Toll were barred by the Statute of Repose as a matter of law because they were filed over 12 years after the completion of the home's lawful construction.

*Id.* at 1236-37.

pursue this line of questioning at a hearing, they were deprived of due process.

Reply Brief of Appellants, at 2-3.

This claim is unavailing. This Court issued its opinion in **Johnson** on September 19, 2023. Arbitrator Slakas first communicated his requirements for pre-hearing submissions to counsel in an email dated October 5, 2023. The submissions were not due until December 15, 2023. **See** Toll Brothers Memorandum of Law in Opposition to Petition to Vacate, 4/12/24, at Exhibit H (email from Arbitrator Slakas summarizing 11/9/23 Zoom conference and noting date for submissions of briefs "adjusted to December 15[, 2023] and replies due December 22[, 2023]"). Even after the December 15, 2023 deadline, Appellants supplemented their submission to the arbitrator with additional evidence on January 11, 2024. Accordingly, Appellants had ample opportunity, following the mid-September 2023 filing of this Court's decision in **Johnson**, to obtain an expert report in support of their claim that the construction was not performed "lawfully" despite the issuance of a certificate of occupancy.[8]

_____

[8] We note that **Johnson** is not the first time that this Court has recently had occasion to address the construction of the term "lawfully" as used in the Statute of Repose. In **Evangelical Lutheran Church of the Atonement at Wyomissing, PA v. Horst Constr.**, 251 A.3d 1221 (Pa. Super. 2021) (Table), this Court affirmed the trial court's application of the Statue of Repose and held that "[t]he occupancy permit constituted evidence of record to indicate that Appellees lawfully performed the construction." **Id.** at *5. Although **Horst** is an unpublished memorandum decision, the **Johnson** court explicitly relied on the Court's reasoning in that case in rendering its decision. **See Johnson**, 302 A.3d at 1236-37 ("As in **Branton** [**v. Nicholas Meat, LLC**, _(Footnote Continued Next Page)_

In sum, Appellants can point to no material evidence that they were prevented from presenting to the arbitrator which would have had an effect on the outcome of the arbitrator's decision. *See Kopew*, 237 A.3d at *8. Accordingly, we affirm the trial court's order denying Appellants' petition to vacate the award of the arbitrator.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025

---

159 A.3d 540 (Pa. Super. 2017)] and *Horst*, we find that the trial court did not err in applying the Statute of Repose despite the allegation of building code violations."). Thus, as of 2021, Appellants were on notice as to the key role of an occupancy permit in determining the applicability of the Statute of Repose and the potential need to adduce evidence disputing the appropriateness of the permits issued in this case.